# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:

SHAWN EUGENE PETRO
CLARA ALICIA PETRO
    Debtors

Case Number: 07-06638
Chapter 13
Hon. George C. Paine, II

## MEMORANDUM

This matter is before the court on the objection of Henry E. Hildebrand, III, Standing Chapter 13 Trustee for the Middle District of Tennessee, to the debtors' proposed chapter 13 plan. More specifically, the trustee objects that the proposed plan fails to use the proper methodology to calculate the debtors' projected disposable income, and therefore has not been proposed in good faith. The precise is whether calculation of the debtors' projected disposable income is to be done by a strictly mathematical formula legislated by Congress under BAPCPA, or whether Schedules I and J can be referred to in setting disposable income. For all the reasons contained herein, the court finds that the BAPCPA amendments to the Bankruptcy Code require the application of a strictly mathematical formula in determining "projected disposable

income." The trustee's objections to confirmation are therefore OVERRULED. The following constitutes the court's findings of fact and conclusions of law.

Shawn and Clara Petro filed their chapter 13 petition on September 12, 2007. The debtors filed all required Statements and Schedules. Form B22C indicates that the debtors are above-median income debtors, with monthly disposable income pursuant to 11 U.S.C. § 1325(b)(2) of *negative* $670.66. Despite the negative monthly disposable income, the debtors' 60 month plan proposes monthly payments of $1,439.75, and will pay a dividend to unsecured creditors of approximately 23%.

The debtors' Schedule I and J paint a different financial picture than is created by the statutory snapshot required by Form B22C. Schedules I and J show Average Monthly Income of $7,891.33 and Average Monthly Expenses of $6,505.00 leaving net monthly income of *positive* $1,386.33. The discrepancy is explained by the debtors with a notation on their B22C that Mrs. Petro had recently become employed.

The Chapter 13 Trustee objected to confirmation of the debtors' plan because the plan fails to commit all of the debtors' projected disposable income. According to the trustee, first, the plan does not reflect the debtors' increased income, and secondly, the debtors' calculation of certain expenses is improper. Finally, the trustee alleges that

based on the debtors' failure to include their increased income in their plan to pay unsecured creditors, the plan is not proposed in good faith citing 11 U.S.C. § 1325(a).

Confirmation of the debtors' plan hinges on how the debtors must project monthly income and expenses as above-median debtors. If the court finds that the B22C is the standard for projecting disposable income, then the debtors' plan as proposed is confirmable over the trustee's objections assuming the expenses are proper. If however, the court finds that Schedule I and J are the standard for projecting disposable income and determining expenses, then the debtors' plan, as proposed, does not meet 11 U.S.C. § 1325(b).

The trustee encourages the court to consider the meaning of projected disposable income as a forward-looking concept, as opposed to an historical concept of the debtors' current monthly income as calculated pursuant to 11 U.S.C. § 101(10A) and set forth in Form B22C. The trustee argues that the term "projected" is a modifier, allowing the court to treat the disposable income figure determined pursuant to 11 U.S.C. § 1325(b)(2) as merely a starting point for determining the debtor's projected disposable income.[1] The debtors contend that 11 U.S.C. § 1325 is clear in its mandate: judicial

---

[1] At trial, the trustee alluded to an earlier bench decision of this court allowing the projected disposable income as a starting point. As the court recalls, the debtors in that case had much higher disposable income in the six months prior to filing and much lower income post-filing. Irrespective of that bench ruling, the court now finds to the contrary.

discretion has been removed and only Congress' new mathematical formula can be employed to calculate the debtors' projected disposable income.

## A. *Calculating Disposable Income*

11 U.S.C. § 1325(b)(1) provides for either full payment of the objecting unsecured creditor's claim or a showing that all "projected disposable income to be received" during the "applicable commitment period" be applied to make payments to unsecured creditors under the plan.

Congress defined "disposable income" in 11 U.S.C. Section 1325(b)(2), as modified by BAPCPA to read as follows:

> (b)(2) For purposes of this subsection, "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended-
>
> > (A)  (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> >
> > (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the

> year in which the contributions are made; and
>
>> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2). Income is no longer based on "income received by the debtor," but instead is based on the debtor's "current monthly income" (CMI). This new term is defined in 11 U.S.C. § 101(10A).[2] CMI is based on a debtor's average prepetition income for the six months prior to filing, includes certain household contributions to income, and contains limited statutory exclusions. CMI may or may not reflect a debtor's present income.

---

[2] The term "current monthly income"-

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on-
>
>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>>
>> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

As noted by the court in ***In re Kolb***, 366 B.R. 802, 810 (Bankr. S.D. Ohio 2007):

> It has been correctly noted, borrowing from history's judgment of the Holy Roman Empire, that CMI is not current, not really monthly, or necessarily income, Congress felt this was how income should be determined. ***See Keith Lundin, CHAPTER 13 BANKRUPTCY 3D ED., § 468.1, p. 468-2-468-5 (Supp.2006).***

Once CMI is calculated for an above-median income debtor, expenses are determined by 11 U.S.C. § 707(b)(2)(A). *See 11 U.S.C. § 1325(b)(3)*. Just as CMI may not represent a debtor's actual income, the expenses enumerated in § 707(b)(2)(A) are not derived from a debtor's actual expenses. Instead, the expenses are based, in large part, on predetermined standards, particularly standards "issued by the Internal Revenue Service." *11 U.S.C. § 707(b)(2)(A)(ii)(I)*.[3]

---

[3] 11 U.S.C. § 1325(b)(3) states that:

> Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than-
>
> (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>
> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>
> (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

Section 707(b)(2)(A) states:

> (2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of-
>
> > (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
> >
> > (II) $10,000.
>
> (ii)(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include

reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of-

7-U.S. Bankruptcy Court, M.D. Tenn.

The calculation of disposable income for an above-median family income debtor is therefore: CMI minus the allowed expenses of § 707(b)(2)(A). "The statutory language selected by the drafters indicates that Congress deliberately preferred these defined immutable expenses for above family median income debtors as opposed to their actual reasonable and necessary expenses verified under oath. Where Congress wanted to provide any discretion, the statutory language provides for this discretion explicitly, unambiguously, and with defined conditions." ***In re Kolb***, 366 B.R. 802, 812 (Bankr. S.D. Ohio 2007).

There has been widespread judicial dialogue on the meaning of the term "projected disposable income." ***Compare In re Kibbe***, 361 B.R. 302, 312 (1st Cir. BAP 2007); ***In re Lanning,***, ___B.R. ___, 2007 WL 4348055 (10th Cir. (BAP) 2007); ***In re Chriss-Price***, 376 B.R. 648, 651-52 (Bankr. M.D. Tenn. 2006) (J. Harrison); In ***re Hardacre***, 338 B.R. 718 (Bankr. N.D. Texas 2006); ***In re Jass***, 340 B.R. 411 (Bankr. D. Utah 2006); (all holding that projected disposable income is different from

---

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

disposable income) ***with In re Dalton***, 2007 WL 454024 (Bankr. S.D. Miss., Dec. 19, 2007); ***In re Musselman,*** ___ B.R. ___, 2007 WL 4357161 (Bankr. E.D.N.C., Nov. 30, 2007); ***In re Kolb***, 366 B.R. 802, 812 (Bankr. S.D. Ohio 2007); ***In re Alexander***, 344 B.R. 742 (Bankr.E.D.N.C.2006) (holding that projected disposable income for above-median debtors is disposable income as defined by § 1325(b)).

The court in ***Musselman*** asks:

While the use of the word "projected" as an adjective before the term "disposable income," appears to modify the meaning of "disposable income," if Congress had intended different meanings, then why did Congress choose to redefine "disposable income"?

***Musselman*** at *2.

The court in ***Musselman*** goes on to explain:

Congress defined "disposable income" in 11 U.S.C. § 1325(b)(2) and states that it is doing so "[f]or purposes of this subsection," referring to subsection (b). The term "disposable income" is not used in this subsection in any other capacity than with the term "projected disposable income." Therefore, the only reasonable explanation is that Congress intended to change the definition of disposable income from its pre-BAPCPA computation, i.e. subtracting Schedule J expenses from Schedule I income, to the computation as specifically stated within the definition provided by Section 1325(b)(2).

First, to judicially modify the definition of "disposable income" as given in § 1325(b)(2). would require the court to create a formula for determining payments to unsecured creditors, rather than following the clear statutory definition. Several courts have concluded that use of the word "projected" distinguishes projected disposable income from disposable income, as defined in Section 1325(b)(2) and requires that the court use the "old" method of computing disposable income to yield projected disposable income, i.e. subtract the current monthly expenses on

9-U.S. Bankruptcy Court, M.D. Tenn.

Schedule J from the current monthly income on Schedule I. ***See, e.g., In re Fuller***, 346 B.R. 472 (Bankr. S.D. Ill. June 21, 2006) (projected disposable income to be determined by subtracting expenses from Schedule I); ***In re Demonica***, 345 B.R. 895 (Bankr. N.D. Ill. July 31, 2006) (Schedule I should be used to determine projected disposable income since it reflects current income at the time of filing).

Still others have treated the disposable income figure reached by Form B22C to be merely a "starting point" for determining the debtor's projected disposable income which may be adjusted according to the debtor's current financial situation. ***See, e.g., In re Jass***, 340 B.R. 411 (Bankr.D.Utah 2006) (holding that the Statement of Current Monthly Income was the presumptive amount of projected disposable income, but presumption could be rebutted by the debtor upon a showing of substantial change of circumstances); ***In re Risher***, 344 B.R. 833 (Bankr. W.D. Ky.2006) (holding that the disposable income arrived at with Form B22C is a beginning point for evaluating the debtor's past and current financial status). While these may sound like reasonable means of reaching projected disposable income, the "starting point" and "presumption" language are judicially written statutes, which is not the job of the judiciary, but the job of the legislative branch. Although the debtor's current financial situation may be significantly different from the situation illustrated by the projected disposable income figure derived at by Form B22C. Congress gave the court some flexibility in determining the debtor's current monthly income in unusual circumstances. Specifically, 11 U.S.C. § 101(10A)(ii) allows the court to determine another date on which current monthly income will be determined if the debtor does not file Schedule I, and 11 U.S.C. Section 521(a)(1)(B)(ii) requires the filing of Schedule I unless the court orders otherwise. ***See In re Ingram***, Case No. 06-02714-8-RDD (Bankr.E.D.N.C. Nov. 20, 2006).

If Congress had intended for "projected disposable income" to continue to be a figure derived by subtracting Schedule J expenses from Schedule I income, Congress would not have changed the definition of disposable income in § 1325(b)(2) and (3) which employs current monthly income as defined in § 101(10A), which in turn specifically excludes benefits received under the Social Security Act, et al., and differentiates expenses for above-median and below-median income debtors. And, if Congress had intended that the definition of "disposable income" be merely a starting point or a presumptive figure for determining "projected

disposable income," allowing courts the flexibility to make that determination, it could have so stated within the confines of § 1325(b). Instead, Congress chose to impose a rigid definition with little room for flexibility by the court.

Second, this interpretation is further supported by the legislative history of the statute. H.R. Rep. 109-31(I) states that § 1325(b)(1) specifies that courts must find that a debtor's disposable income is to be used to pay unsecured creditors. H.R.Rep. No. 31(I), 109th Cong., 1st Sess. at 52 (2005), reprinted in 2005 U.S.C.C.A.N, at 123. Defining the term "disposable income" was a fruitless task if the new definition in § 1325(b)(2) is not the same "disposable income" as in Section 1325(b)(1)(B). As stated in *In re Alexander*, 344 B.R. 742, 749 (Bankr.E.D.N.C.2006), "If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose." Therefore, the language of the statute is clear. Unless an absurd result occurs, the court's job is to apply the plain meaning of the statutory language and not to question congressional policy or rewrite the statute. Certainly, Congress could have rationally made a policy decision to determine an amount to be paid to unsecured creditors based on the average income of the debtor for the six months prior to filing as being more reliable and indicative of projected disposable income.

Thus, this court holds that the term "projected disposable income" as used in § 1325(b)(1)(B) and the term "disposable income" as defined in § 1325(b)(2) have the same meaning as to above-median debtors and will determine a monthly amount, not necessarily the only amount, to be paid to unsecured creditors through the chapter 13 plan. In § 1325(b)(1)(B), the new computation of "disposable income" is simply projected out over the time of the applicable commitment period. . .

*Id.* The court finds the reasoning of *Musselman* and other cases such as *Kolb* that are in agreement persuasive. Accordingly, this court finds, just as the court in *Kolb* did:

the phrase "projected disposable income" has the same meaning today as it did before the enactment of BAPCPA. *Brady,* 361 B.R. at 771. Congress simply decided upon a new way to calculate disposable income before projecting that figure into the plan. *See id.* (determining that the

11-U.S. Bankruptcy Court, M.D. Tenn.

> "term 'projected' requires the court to 'project' forward the debtors' disposable income, as now defined under the revised Code, to determine the requisite payments to unsecured creditors under the plan"); **Hanks**, 362 B.R. at 499 ("In 'projecting' a return to general unsecured creditors under the BAPCPA for above-median income debtors, this Court's view is that its new function is solely to multiply the net 'disposable income' figure ... by the applicable commitment period. No more, no less.").

**Kolb** at 813. As other courts have noted, the adoption of such a mechanical test may lead to impractical results, but "'[i]t is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result.'" **In re Nance** 371 B.R. 358, 367 (Bankr. S.D. Ill., 2007) **(quoting Lamie**, 540 U.S. at 542, 124 S.Ct. 1023, (**quoting U.S. v. Granderson**, 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (concurring opinion)).

That mechanical calculation, as set forth in the debtors' Form B22C gives the debtors' monthly income of $6,786.67.

### *B. Calculating the Above-Median Debtors' Expenses*

Having now determined the debtors' income as defined by 11 U.S.C. § 1325, the court must now calculate these above-median income debtors' expenses. The trustee would have the court set expenses in accordance with 11 U.S.C. § 707(b)(2), but he objects to the debtors' telecommunications expense of $350. The debtors argue that if the court determines their income pursuant to B22C, then their expenses should be

figured pursuant to section 707(b)(2), but if the court considered Schedule I to determine income, it should likewise consider Schedule J to calculate expenses.

11 U.S.C. § 1325(b)(3) makes the determination of disposable income under § 707(b)(2)(A) mechanical in nature. Part IV of Form B22C sets forth mostly inflexible guidelines detailing what expenses an above-median debtor may deduct from CMI. In this case, the debtors B22C lists expenses under the means test of 707(b)(2)(A) of $7,457.33.

The trustee and debtors appear to be in agreement, and this court so finds, that calculation of expenses should occur based on the Form B22C, not Schedule J. Section 1325(b)(3) mandates this result. Schedule J has no role in computing that figure. Section 1325(b)(3) expressly states that the amounts reasonably necessary to be expended for purposes of determining disposable income **shall** be determined pursuant to § 707(b)(2)(A) and (B) (emphasis added). The disposable income calculations made on the B22C Form are drawn from the Internal Revenue Service standards and additional deductions allowed under § 707(b)(2), not from the Schedule J. ***See e.g., In re Miller***, 361 B.R. 224 (Bankr. N.D. Ala. 2007); ***In re Nance,*** 371 B.R. 358 (Bankr. S.D.Ill. 2007) (***citing In re Alexander***, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006)); ***In re Kolb***, 366 B.R. 802 (Bankr. S.D.Ohio 2007); ***In re Tranmer***, 355 B.R.

234 (Bankr. D.Mont. 2006); **In re Barr**, 341 B.R. 181 (Bankr. M.D.N.C. 2006); **In re Rotunda**, 349 B.R. 324 (Bankr.N.D.N.Y.2006); **In re Guzman**, 345 B.R. 640 (Bankr. E.D.Wis.2006). Under this straight-forward approach, "one simply takes the calculation mandated by § 1325(b)(2) and does the math." **Alexander**, 344 B.R. at 749.

The court finds that using Schedule I and J would obviate Congress obvious marriage of the calculation of disposable income for above-median income debtors, to § 707(b)(2)(A) under the means test, and further would render § 707(b)(2)(B) meaningless. Under § 707(b)(2)(B), the court may consider special circumstances that make "such expenses or adjustments to income necessary and reasonable." Congress wanted a mathematical formula and left minimal judicial discretion for deviation from the B22C in very limited "special circumstances" as set forth in § 707(b)(2)(B).

Thus, under the mechanical definition adopted by Congress in the BAPCPA, the debtors have expenses of $7,457.33. Applying the Congress' formula of CMI minus 707(b)(2) expenses results in negative disposable income of $670.66. However, the trustee objects to the debtors' B22C, Part IV, Line 37, wherein the Debtors reported monthly "Other Necessary Expenses: telecommunications services of $350.00." Absent proof of the necessity of the claimed telecommunications expenses, the Trustee objects to the extent of the Debtors' deduction.

14-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:07-bk-06638   Doc 48   Filed 01/23/08   Entered 01/23/08 15:51:07   Desc Main
Document      Page 14 of 17

The Debtors bear the burden of establishing that their deduction is proper. ***See In re Edmunds***, 350 B.R. 636, 645 (Bankr. D.S.C. 2006) ("The Court also finds that [Other Necessary Expenses] must be reasonable. Debtors bear the burden of demonstrating that these expenses are actual, reasonable, and necessary expenses . . . ." (citation omitted)).

At the confirmation hearing, debtor Clara Petro testified about the reasonableness of their deductions. She explained the telecommunications expense comes from the cell phone bills of herself and her family. She and her husband work a considerable distance from their four children's schools and they use their cell phones to stay in touch with their younger children. Her testimony was largely uncontested. The court finds Clara Petro's testimony was adequate to carry the burden of proof to establish the reasonableness of their telecommunications expense.[4]

Finally, the trustee objects to confirmation based on the debtors' alleged lack of good faith. Section 1325(a)(3) requires that a Chapter 13 plan be "proposed in good faith." ***11 U.S.C. § 1325(a)(3)***. In this case, according to the trustee, the debtors are proposing to retain a significant portion of actual disposable income during the plan period, at the expense of the debtors' unsecured creditors which the trustee contends

---

[4] Even if the court had denied their telecommunications expense or lessened the deduction, the debtors would nonetheless have negative disposable income. The court addresses the telecommunications objection out of an abundance of caution, because in actuality, the trustee's objection to that particular line item does not change the court's ruling.

demonstrates a lack of good faith.

The court overrules any objection to good faith based on the debtors' failure to contribute all their disposable income to the plan. The court has found that the debtors' proposed plan complies with all aspects of 11 U.S.C. § 1325. The court cannot find these debtors acted in bad faith by following Congress' statutory instructions in calculating their disposable income. Any objection based on good faith is therefore, overruled.

In summary, the court finds that under section 1325(b)(2) projected disposable income shall be calculated based upon Congress' mechanical approach of CMI as determined by the B22C less the 707(b)(2) expenses for these above-median debtors. Based on those calculations, the debtors have negative projected disposable income of $670.66. The trustee's objections to confirmation based upon the debtors' failure to contribute all of their disposable income to the plan is overruled. Likewise, the trustee's objection to the debtors' telecommunications expense is overruled. Finally, the trustee's good faith objection pursuant to section 135(a)(3) is overruled. Counsel for the debtor shall prepare an order not inconsistent with this Memorandum within ten (10) days of entry.

> It is, THEREFORE, so ordered.
> This ____ day of January, 2008.

*THIS MEMORANDUM WAS SIGNED AND
ENTERED ELECTRONICALLY AS INDICATED
AT THE TOP OF THE FIRST PAGE.*